KAVANAUGH, Circuit Judge,
dissenting:
Fogo de Chao operates Brazilian steakhouses in the United States. It wants to employ Brazilian chefs rather than American chefs in these steakhouses. The question under the immigration statute at issue in this case is whether Fogo de Chao’s Brazilian chefs possess “specialized knowledge.” 8 U.S.C. § 1101(a)(15)(L). If so, these Brazilian chefs may obtain L1-B visas to work in the United States.
In 2004, United States Citizenship and Immigration Services (known as USCIS) announced its determination that foreign chefs seeking to work in ethnic restaurants in the United States “generally are not considered to have ‘specialized knowledge.’ ” USCIS Memorandum (Sept. 9, 2004) at 1, reprinted in Joint Appendix (“J.A.”) 48. In this case, USCIS adhered to and applied that now-longstanding agency policy, concluding that Fogo de Chao’s Brazilian chefs do not possess specialized knowledge for purposes of this visa program. The District Court upheld the agency’s decision.
The majority opinion now overturns the agency’s decision. In doing so, the majority opinion says that it must decide the case •without any meaningful deference (under Chevron, State■ Farm, or otherwise) to the agency’s legal analysis and factual conclusions. I will assume for the sake of argument that the majority opinion is right to afford no meaningful deference to the agency. But even reviewing the matter de novo, I agree with the agency’s decision and therefore would uphold it.
Fogo de Chao contends that Brazilian chefs have specialized knowledge based on: (i) the chefs’ knowledge of Brazilian culture and culinary practices from growing up and learning how to cook meat in rural Brazil and (ii) the time it would allegedly take American chefs to learn how to cook Brazilian steaks. The agency correctly rejected those arguments.
As to Fogo de Chao’s first argument, its so-called “cultural” argument, I fully agree with the agency’s longstanding position— which it relied on in this case — that one’s country of origin, or cultural background, does not constitute specialized knowledge under this immigration statute for purposes of being a chef or otherwise working in an ethnic restaurant or bar in the United States. See 2004 USCIS Memorandum at 2-3. Fogo de Chao says that it wants “authentic” Brazilian chefs in its U.S. restaurants. Tr. of Oral Arg. 7, 19, 20, 22-23. But such a circular “foreign citizenship and cultural background constitute specialized knowledge for purposes of working in an ethnic restaurant or bar” argument would gut the specialized knowledge requirement and open a substantial loophole in the immigration laws.
As to Fogo de Chao’s second contention — that the Brazilian chefs have specialized knowledge because it takes significant time for American chefs to learn how to *1153 cook Brazilian steaks — I agree with the agency that Fogo de Chao failed to prove that claim. Put simply, the record does not establish that Fogo de Chao’s Brazilian chefs possess skills that American chefs cannot learn within a reasonable amount of time.[1] At oral argument, Fogo de Chao asserted. that in “Fogo’s experience,” a cook “born in America” cannot learn to cook Brazilian steaks as well as a Brazilian-born person. Tr. of Oral Arg. 57. But the record demonstrates that Fogo de Chao’s chefs perform tasks that can be readily learned by American chefs, such as talking with customers while cooking several cuts of meat on an open grill. See J.A. 631-32; cf. Maj. Op. at 1140 (emphasizing that Fogo’s chefs engage in “preparing and cooking five to six skewers of meat on an open grill,” “circulating through the dining room to carve meat for guests,” and “educating those guests about both the cuts of meat being served and gaucho culinary and cultural traditions”). Indeed, Fogo de Chao already employs some American chefs in its U.S. steakhouses, which belies Fogo’s contention that Americans cannot do the job. Moreover, reading the record with just a dash of common sense tells us that chefs who happen to be American citizens surely have the capacity to learn how to cook Brazilian steaks and perform the relevant related tasks. To maintain otherwise, as Fogo de Chao does, is to imply that Brazilian chefs are essentially born with (or somehow absorb during their formative years) a cooking skill that cannot be acquired through reasonable training, which seems an entirely untenable proposition.
Ultimately, Fogo de Chao’s argument is that American chefs either can’t learn to cook or won’t cook Brazilian steaks. See, e.g., Tr. of Oral Arg. 7-9, 57. But the “Americans can’t learn to cook” proposition is a factually unsupported stereotype that finds no home in the specialized knowledge visa program. And the “Americans won’t cook” proposition in the end is just an economic argument. Like other restaurants, Fogo de Chao must compete in the chef market by offering better wages or benefits to attract quality chefs. Fogo de Chao undoubtedly would save money if it could simply import experienced Brazilian chefs rather than hiring and training only American chefs to cook at its steakhouses here in the United States. And at bottom, that seems to be at least part of what is going on in this case — namely, Fogo’s desire to cut labor costs masquerading as specialized knowledge. But under the provision of the immigration laws at issue here, mere economic expediency does not authorize an employer to displace American workers for foreign workers.
For its part, the majority opinion does not fully embrace Fogo de Chao’s broad “cultural” argument. But the majority opinion says (contrary to the agency and the District Court) that Fogo de. Chao may have put forth sufficient evidence that American chefs could not be trained to do these jobs within a reasonable amount of time. See Maj. Op. at 1141-44. As I have explained, I respectfully disagree with that analysis of the factual record in this case.
The United States is a nation of immigrants. In our constitutional system, Con-
*1154 gress and the President determine the circumstances under which foreign citizens may enter the country. The judicial task is far narrower: to apply the immigration statutes as written. By claiming that its Brazilian chefs possess “cultural” knowledge and skills that cannot be learned by Americans within a reasonable time, Fogo de Chao has attempted an end-run around the carefully circumscribed specialized knowledge visa program.[2] For a brief time, Fogo de Chao convinced some lower-level agency officials to issue specialized knowledge visas for its chefs. But in this case, applying its definitive 2004 policy regarding foreign chefs,[3] the agency clamped down and said no to Fogo de Chao. This case does not raise the question of how other visa categories might apply to foreign workers such as these chefs. But under this provision of the immigration laws, I would uphold the agency’s decision and affirm the judgment of the District Court. I respectfully dissent.[4]

. Fogo de Chao agrees that the relevant question for this aspect of its argument is whether American chefs could be trained to do the job within a reasonable amount of time. See, e.g., Tr. of Oral Arg. 4 ("Fogo completely agrees” with the proposition that "recipes and cooking techniques that could be learned by a chef through exposure to the recipe or cooking techniques for a brief or moderate period of time generally do not constitute specialized knowledge.”).

. In critiquing this dissent, the majority opinion says that sensitive immigration judgments are “squarely in the hands of the Political Branches.” Maj. Op. at 1152 n. 10. It seems unusual for the majority opinion to rely on that principle in response to this dissent given that it is the majority opinion that overturns the decision of the Executive Branch in this case.

. The agency decision in this case repeatedly referenced the agency's 2004 policy, stating for example: "The 2004 Ohata Memorandum indicates that chefs and specialty cooks presumptively do not have 'specialized knowledge' even if they possess knowledge of a restaurant's special food preparation techniques acquired through training.... Here, the petitioner claims that the knowledge required to perform the ancillary duties of a churrasqueiro chef comes primarily from the beneficiary’s 'unique life experience’ and upbringing in the gaucho culture, rather than from in-house training. The Ohata Memorandum makes no reference to cultural knowledge as a source of specialized knowledge.” USCIS Appeals Office Decision at 45, reprinted in J.A. 670.

.Although I disagree with the majority opinion’s conclusion, I note one point that might be relevant going forward. From my reading of the majority opinion, it appears that the agency could permissibly adopt a binding regulation (not just a policy memo) that would receive Chevron deference and that would make clear that workers such as these Fogo de Chao chefs do not possess specialized knowledge under this immigration statute. See United States v. Mead Corp., 533 U.S. 218, 229-30, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Whether the agency chooses to do so is of course up to the agency.